IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| SHARON M. WHITLOCK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CV-10-BE-01079-NE |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

**I. Introduction**

On April 24, 2006, the claimant, Sharon Whitlock, applied for disability insurance benefits under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act. (R. 14). The claimant alleges disability commencing on November 17, 2005 because of a back injury, mini-strokes, mitral valve prolapse, pain, memory problems, and headaches. (R. 116). The Commissioner denied the claims on October 12, 2006. (R. 14). The claimant filed a timely request for a hearing before an Administrative Law Judge on December 01, 2006, and the ALJ held a hearing on February 25, 2008. *Id.* In a decision dated August 21, 2008, the ALJ found that the claimant was not disabled as defined by the Social Security Act, and, thus, was ineligible for supplemental security income. (R. 26). On February 25, 2010, the Appeals Council denied the claimant's request for review; consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 1). The claimant has exhausted her administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, this court affirms

the decision of the Commissioner.

## II. Issue Presented

The claimant presents two issues for review. First, whether the ALJ was required to obtain additional psychological testing. Second, whether the ALJ properly applied the Eleventh Circuit's three-part pain standard.

## III. Standard of Review

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if he applied the correct legal standards and if his factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g) (2006); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that substantial evidence supports. Substantial evidence is more than a mere scintilla. It means evidence that a reasonable mind could accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] factual findings." *Walker*, 826 F.2d at 999. A reviewing court not only must look to the parts of the record that support the decision of the ALJ but also must view the record in its entirety and take account of evidence that detracts from the evidence upon which the ALJ relied. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

### IV. Legal Standard

A person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2006). To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, subpt. P, app. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920 (2011).

In this case, the claimant relies on *McCall v. Bowen* – stating that "the Secretary may determine that the claimant is not under a disability 'only if the Secretary has made every reasonable effort' to obtain the opinion of 'a qualified psychiatrist or psychologist" – to argue the ALJ erroneously failed to obtain a consultative examination. 846 F.2d 1317, 1320 (11th Cir. 1988)). However, an ALJ "is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the administrative law judge to render a decision." *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988).

In evaluating pain and other subjective complaints, the Commissioner must consider whether the claimant demonstrated an underlying medical condition, and *either* "(1) objective

medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (emphasis added); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); 20 C.F.R. § 404.1529 (2011).

## V. Facts

The claimant has a fifth grade education and was fifty-six years old at the time of the administrative hearing. (R. 37). In the past, she has worked as a cashier, kitchen helper, housekeeper, store laborer, production assembler, security guard, and deli worker. (R. 126-32). The claimant alleged she was unable to work as of November 17, 2005 because of a back injury, mini-strokes, mitral valve prolapse, pain, memory problems, and headaches. (R. 116).

*Physical Limitations*

On February 27, 2003, the claimant slipped and injured her back at work. On April 08, 2003, Dr. Cyrus Ghavam, an orthopedic surgeon, examined the claimant for complaints of low back pain. Dr. Ghavam diagnosed the claimant with low back pain, referred her to physical therapy, and stated she may continue work as long as she did not lift anything more than 40 pounds. (R. 239). During a follow-up visit on June 03, 2003, Dr. Ghavam noted the claimant's symptoms remained unchanged and ordered a MRI that revealed a central annular tear at L5-S1. (R. 237). The claimant rejected "any aggressive interventions" and Dr. Ghavam continued the claimant's work restrictions. As part of her rehabilitation treatment, the claimant underwent a Functional Capacity Evaluation on October 03, 2003. The evaluation reported that she could consistently "walk, carry 20 pounds, scoop, crouch, kneel, climb stairs, or stand . . . within a safe

tolerance level." (R. 233).

On August 25, 2005, Dr. Ghavam referred the claimant to Dr. Keith Anderson, a physiatrist (a doctor of physical medicine and rehabilitation). Dr. Anderson reported that the claimant had back pain that radiated into her right leg, but did "not exhibit any pain behaviors." For treatment, Dr. Anderson prescribed Mobic (an anti-inflamartory for arthritis or pain), Nexium (a drug for gastroesophageal reflux disease), and Elavil (an antidepressant) along with an exercise regime. (R. 240-41).

On October 30, 2005, the claimant went to the emergency room complaining of right side numbness, blurred vision, dizziness, and trouble talking. (R. 273). On October 31, 2005, Dr. Randall Sparks, a family practitioner, noted that MRI results suggested that the patient had experienced a few small microvascular lacunar infarcts (strokes). (R. 247-48, 273).

On January 06, 2006, the claimant visited Dr. Sparks, reporting leg pain, restless legs, and burning/stinging pain. Dr. Sparks diagnosed her with leg pain, probable neuopathic pain, and restless legs. For treatment he prescribed Mirapex (a drug used to treat Parkinson's Disease). (R. 270). On May 02, 2006, Central Health Care diagnosed the claimant with bilateral leg pain. (R. 295).

On September 25, 2006, Dr. Frank Gillis, a family practitioner, gave the claimant a consultative evaluation at the request of the Disability Determination Service. Dr. Gillis diagnosed the claimant with chronic low back pain and residual headaches, visual disturbances, vertigo disequilibrium, and memory deficits resulting from her stroke. Dr. Gillis stated the claimant had functional restrictions that would create difficulty in jobs "requiring prolonged sitting, standing, walking, repetitive bending, twisting involving the waist, lifting, pushing, or

pulling." Additionally, Dr. Gillis recommended avoiding heights. (R. 357).

*Mental Limitations*

The claimant has a history of situational depression that doctors have addressed with medication. (R. 360). On September 26, 2006, Dr. Barry Wood, a clinical psychologist, conducted a consultative mental evaluation of the claimant at the request of the Disability Determination Service. (R. 359). Dr. Wood noted that the claimant exhibited significant dramatic flair, interpersonal manipulation, and histrionic behavior. (R. 361). Despite the claimant's alleged memory loss and depression, Dr. Wood found no evidence of short-term memory loss, stated her long-term memory appeared to be intact, and noted the claimant exhibited few or no signs of depression. (R. 361-62). Additionally, Dr. Wood estimated that the claimant's IQ fell within the average or high low-average range based on her educational history, use of vocabulary, and answers to a series of questions. However, he did not think the claimant exerted optimal effort during the brief intelligence testing. (R. 362).

At the request of the ALJ, Dr. Christine Lloyd, a psychiatrist, also performed an evaluative mental examination on May 08, 2008 to investigate any mental deficits resulting from the claimant's stroke. (R. 21, 432). Dr. Lloyd conducted a significant battery of psychological testing, but concluded the results did not represent a valid evaluation of the claimant's neuropsychological functioning. (R. 435). Dr. Lloyd questioned the validity of the tests because the claimant ranked below the first percentile on cognitive function, language, memory, higher cognitive function, and attention tests. (R. 437-39). The Folstein MiniMental Status Examination test estimated the claimant's full scale IQ to be 50. (R. 437). Additionally, both the Test of Memory Malingering and Rey 15-item Memorization Test with Recognition Trial suggested the

claimant "may have lacked effort or intentionally feigned memory problems." (R. 440). Dr. Lloyd diagnosed the claimant with Malingering vs. Conversion Disorder and Pain Disorder, but was unable to draw any further conclusions because of response bias or symptom exaggeration. (R. 441). Specifically, Dr. Lloyd stated that these results could not "be explained by medication, mental slowness, or true neurological impairment." (R. 442). Dr. Lloyd noted that while the claimant may have true pain, she suspected the claimant's "perception of that pain contained a psychological component." (R. 441).

*The ALJ Hearing*

The claimant requested and received a hearing before an ALJ. (R. 72, 77). At the hearing, the claimant testified that pain at an intensity of seven on a scale of one to ten prevented her from working. (R. 39, 41). She testified that this pain persisted for six to seven hours a day and required her to lie down for four to four-and-a-half hours a day. (R. 41). The claimant testified that she could not walk more than one city block, sit longer than thirty minutes, stand for longer than ten minutes, and sometimes had difficulty opening a refrigerator, but could carry a jug of milk across the kitchen without difficulty. (R. 42-43). She stated that she could try working as a parking attendant, but was afraid she could not give correct change. (R. 49).

A vocational expert, Mr. Thomas Elliot, also testified at the hearing. *Id.* He stated that the claimant would have transferable skills to work as a lay-away clerk and gate guard. (R. 51). Mr. Elliot testified that a person with the restrictions of the claimant's Residual Functional Capacity Assessment on October 10, 2006 could work as a cashier, production assembler, deli worker, or store laborer. (R. 51-52) Additionally, Mr. Elliot testified that a hypothetical claimant with the added requirements of a sit/stand option, no prolonged walking, and no heights could not

participate in any of the claimant's previous occupations, but could work as an inspector of product, assembler of small products, or as a nut and bolt assembler. (R. 52-53). Finally, Mr. Elliot noted that assuming the claimant's testimony was fully credible, her pain level and need to frequently lie down precluded her from all employment. (R. 55).

*The ALJ's Decision*

On August 21, 2008, the ALJ issued a decision stating the claimant was not disabled under the Social Security Act. (R. 14). First, the ALJ found that the claimant had not engaged in substantial gainful activity since November 17, 2005, the alleged onset date. (R. 16). Second, the ALJ found that the claimant had degenerative disk disease that qualified as a severe impairment. (R. 16). Although the ALJ mentioned other conditions, he thought only the degenerative disk disease was severe. (R. 17-22).

While discussing the claimant's medical record for severe impairments, the ALJ specifically considered the two psychological evaluations. (R. 20-21). Based on the reports of Dr. Wood and Dr. Lloyd, the ALJ found no evidence of memory deficits. (R. 24). Furthermore, the ALJ found that the IQ results from Dr. Lloyd's examination were invalid because Dr. Lloyd found strong evidence of malingering and reported that her results were not an accurate representation of the claimant's abilities. (R. 24).

Third, the ALJ found that none of these impairments met or equaled the requirements of the Listing of Impairments. Fourth, the ALJ found that the claimant had the residual functional capacity to perform a limited range of light work. Specifically, the claimant would require a sit/stand option and be precluded from "prolonged standing, sitting, walking, pushing, pulling, climbing ladders, being around heights or moving machinery, and concentrated exposure to

8

fumes, odors, dusts, gases, poor ventilation, etc." (R. 22). The ALJ determined these restrictions prevented the claimant from performing any past relevant work. (R. 25).

While evaluating the claimant's residual functional capacity, the ALJ specifically analyzed the impact of the claimant's back pain. (R. 23). The ALJ found "that the claimant's medically determinable impairment could reasonably be expected to produce the alleged pain symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible." *Id.* The ALJ noted that the claimant had rejected aggressive treatment for pain in favor of conservative treatment that successfully controlled her symptoms. *Id.* Additionally, the ALJ found that both treating and consultative physicians documented the claimant as having greater physical abilities than she stated in her testimony. (R. 24).

Fifth, the ALJ found that the claimant could work as an inspector of parts, assembler of small products, or a nut and bolt assembler, all jobs that exist in significant numbers in the national economy. (R. 25-26). Thus, the ALJ found that the claimant was capable of making successful adjustment to other work and was not disabled as defined by the Social Security Act. (R. 26).

## VI. Discussion

**A. The ALJ was not required to order additional psychological testing.**

The claimant argues that the ALJ should have ordered additional testing based on a passage in *McCall v. Bowen* that states, "the Secretary may determine that the claimant is not under a disability 'only if the Secretary has made every reasonable effort' to obtain the opinion of 'a qualified psychiatrist or psychologist.'" Claimant's Br. 10 (quoting *McCall*, 846 F.2d at 1320).

Specifically, the claimant asserts she may have a disability pursuant to listing 12.05B or 12.05C because she has no education beyond fifth grade. Claimant's Br. 10-11.

The "claimant bears the burden of proving that he is disabled" and "is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *see also* 20 C.F.R. § 416.912 (2011) ("You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say you are disabled."). Facts demonstrating poor academic performance without medical records of an impairment are not sufficient to assert a mental disability. *See Russell v. Astrue*, 742 F. Supp. 2d 1355, 1369 (N.D. Ga. 2010).

Once the claimant meets this burden of establishing a disability, an ALJ must "order a consultative examination when such an evaluation is necessary for him to make an informed decision." *Reeves v. Heckler*, 734 F.2d 519, 522 (11th Cir. 1984) (citing *Ford v. Sec'y of Health & Human Servs.*, 659 F.2d 66, 69 (5th Cir. 1981)). However, an additional consultative examination is not needed when substantial evidence already exists in the record to support a holding. *Holladay v. Bowen,* 848 F.2d 1206, 1210 (11th Cir. 1988); *see also Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999) (holding that, when the record provided sufficient information, additional expert testimony was unnecessary); *Russell v. Astrue*, 742 F. Supp. 2d 1355, 1369 (N.D. Ga. 2010). The *Russell* court held an ALJ was not required to order a psychological evaluation based on poor academic performance when the claimant had no history of mental impairment and was described as "alert" and "having an age appropriate mental status." *Russell*, 742 F. Supp. 2d at 1369.

Similarly, in the instant case, the court concludes that the ALJ did not err by not ordering

a third psychological evaluation. First, the claimant did not meet the burden of proving she was disabled. The claimant failed to assert a learning disability and did not produce any medical evidence. The first time the claimant mentioned a learning disability was in her brief to this court. Claimant's Br. 10-11. Although the claimant relies on the fact that she did not continue past fifth grade as evidence of a learning disability, this fact does not qualify as the medical evidence necessary to assert a disability. *See* 20 C.F.R. § 416.912 (2011) ("You must provide medical evidence showing that you have an impairment(s)"); *Russell*, 742 F. Supp. 2d at 1369 (holding poor academic performance alone does not establish disability).

Second, even if the claimant had met her burden of establishing a disability, the ALJ met the requirement of *McCall* by considering the opinions of not only one, but two "qualified psychiatrist[s] or psychologist[s]." The record provides substantial evidence for the ALJ to conclude that the claimant was not mentally disabled without ordering a third psychological evaluation.

Rather than suggesting mental disability, the record provides evidence of normal cognitive functioning. Dr. Wood's psychological report estimated the claimant's IQ level in the "average range or high low-average range" despite noting that the claimant did not exert "her optimal effort during [the] brief intelligence testing." (R. 362). Furthermore, during the second test, Dr. Lloyd noted that the claimant "displayed an inconsistent pattern of effort" and "performed in an inconsistent and atypical fashion." (R. 440). As a result, Dr. Lloyd claimed that the results were invalid and not a true representation of the claimant's abilities. (R. 441). Because substantial evidence already exists in the record to support the ALJ's decision, he was not required to order additional psychological testing.

**B. The ALJ properly applied the three-part pain standard.**

The claimant argues the ALJ failed to consider the facts of the claim under the Eleventh Circuit pain standard. Claimant's Br. 13. Although the claimant's brief does not illustrate how the ALJ failed to properly apply the pain standard, the court will review the ALJ's application of the pain standard.

In the Eleventh Circuit, an ALJ must apply the three-part pain standard to determine whether a claimant's testimony of pain or other subjective symptoms are disabling. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). "The pain standard requires (1) evidence of an underlying medical condition and *either* (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id.* Testimony which satisfies this standard is sufficient to support a finding of disability; however, the ALJ retains discretion to evaluate whether the pain is disabling. *Id.*

Once the claimant meets the first requirement, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of [the] pain" to determine severity. *Foote v. Charter*, 67 F.3d 1553, 1561 (11th Cir. 1995); *see also* 20 C.F.R. § 404.1529(c) (2011) (requiring an ALJ to evaluate the intensity and persistence of pain). In this evaluation, the ALJ consults multiple sources including medical evidence, physician's opinions, daily activities, treatments, and inconsistencies in the evidence or testimony. *See* 20 C.F.R. § 404.1529(c)(2)-(4) (2011). The ALJ may decide not to credit testimony only by providing "explicit and adequate reasons for doing so." *Id.*; *see also Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (holding an ALJ may find a complaint not credible if contradicted by substantial evidence). If the

12

ALJ does not clearly articulate reasons for discrediting testimony about pain, a court must accept it as true. *See Foote*, 67 F.3d at 1561-62; *Holt*, 921 F.2d at 1223.

The ALJ properly applied the three part pain standard. First, he determined that the claimant had an underlying disability, degenerative disk disease. Second, he found this condition could reasonably be expected to cause pain, but that the claimant's statements of severe pain were not credible to the extent they contradicted the RFC. (R. 23). Third, he found that the objective medical evidence did not confirm the severity of the alleged pain. (R. 24-25).

In discrediting the claimant's testimony, the ALJ properly considered multiple sources to provide a substantial evidentiary basis. First, the ALJ noted that the claimant had repetitiously requested conservative treatment for her pain in lieu of more aggressive measures. The ALJ noted that the records of two treating physicians, Dr. Ghavam and Dr. Anderson, document the claimant choosing medication and exercise regimes over surgery. (R. 23-24). Dr. Ghavam noted that the claimant "does not feel the pain is severe enough to undergo any aggressive measures such as surgery." (R. 199). Second, the ALJ noted that although the claimant often complained of symptoms resulting from "three mini-strokes," she never sought additional treatment for these alleged complications. Third, the ALJ considered that medical records do not confirm the claimant's alleged symptoms. For example, although the claimant complained of blurred vision, Dr. Gillis reported that she had 20/20 corrected vision. Additionally, during his evaluation Dr. Wood was able to find no evidence to substantiate the claimant's alleged memory loss. Fourth, the ALJ noted that the plaintiff's medical records conflicted with her testimony as to her daily activities. She told Dr. Wood that she could wash dishes, sweep, cook simple meals, and take out the trash; however, at the hearing she testified that her daughter had to do all of the cooking and

cleaning. (R. 24).

The rationales stated above provide substantial evidence to support the ALJ's decision to discredit the claimant's pain testimony.

## VII. Conclusion

For the reasons stated, this court concludes that the decision of the Commissioner is supported by substantial evidence and is to be AFFIRMED. The court will enter a separate order in accordance with this Memorandum Opinion.

DONE and ORDERED this 12th day of July 2011.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE